## City of Georgetown v. Lynn, et al.

(Decided October 1, 1915.)

### Appeal from Scott Circuit Court.

1. **Boundaries—Survey—When Question of Law.**—While, ordinarily, the location of a survey is for the jury, yet, where the location of the lines, according to each theory of a survey, is not disputed and the proper method of making the survey is the only question involved, the question is one of law for the court and not of fact for the jury.

2. **Boundaries—Survey—Proper Method.**—Where the call of the last line of the boundaries of a city is fixed by the legislature as "thence with said road to the point where it strikes the above mentioned southern boundary line," the road is the boundary line and it should be followed as far as possible until it becomes necessary to depart therefrom in order to reach the southern boundary line.

B. M. LEE for appellant.

BRADLEY & BRADLEY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Defendants, George Lynn and his wife, Delina Lynn, live on Clayton Avenue in the Finnell addition of Georgetown. Alleging that the residence of defendants was in the City of Georgetown, the City of Georgetown brought this suit against the defendants to recover certain taxes claimed to be due. The defense was made that the property in question was not located in the city. Trial before a jury resulted in a verdict and judgment for the defendants. The city appeals.

The boundaries of the City of Georgetown were fixed by an act of the General Assembly, which was approved and became a law in the year 1880. Acts 1879-1880, Chapter 392, page 357. Section 1 of that act is as follows:

"That the corporate limits of the town of Georgetown be and are established as follows: By running a line on each side of Main Street, and parallel to the same at a distance of one hundred and fifty poles from its intersection with Hamilton Street; also a line on each side of Hamilton Street, and parallel thereto, at a distance of one hundred and fifty poles from its intersection with Main Street, the corners of said boundary being the points where these lines intersect; also by a line begin-

ning on the north side of Bourbon Street, at the point where the above-mentioned eastern boundary line crosses said street, and running east one sixth of a mile; thence south on a line parallel to said eastern boundary line, until it strikes the north side of the Lemon's Mill Turnpike Road; thence with said road to the point where it strikes the above-mentioned southern boundary line.''

Whether or not defendants' property is within the city limits depends on the proper location of the last course, to-wit: ''Thence with said road to the point where it strikes the above-mentioned southern boundary line.'' The evidence shows that if the Lemon's Mill Turnpike Road be followed absolutely, it never intersects the southern boundary line, that is, the line parallel with Main Street and 150 poles therefrom. The reason for this is that a short distance from said southern boundary line the road turns. According to the city's plat, the line runs with the Lemon's Mill Turnpike Road until it reaches the point where the road turns away from the southern boundary line. From that point a line is run to the southern boundary line. According to the survey and plat made by defendants, the southern boundary line is run to a point where it is claimed it meets the old Lemon's Mill Road and from there it runs to the point of beginning.

The court instructed the jury that if they believed that the residence of the defendants is situated within the limits of the city, as defined in the act of the Legislature read in evidence, then they ought to find that defendants were residents of the city, and unless they so believed, they ought to find that they were not residents of the city. To this instruction the city objected and excepted. After a peremptory instruction in its favor was refused, it asked the following instruction:

''The court instructs the jury that if in surveying the boundary of the City of Georgetown it was found that the survey would not close by following the northern boundary of the Lemon's Mill Turnpike as called for by the act of the Legislature establishing the boundary of the City of Georgetown, and read to you in evidence, and the northern boundary of said turnpike was a well-marked and defined boundary, then, in establishing and locating said boundary it was proper to follow said northern boundary of said turnpike from the point

where said line first struck same under the calls of said act to the point nearest to the corner called for as being 150 poles south of the intersection of Main and Hamilton Streets, and to then extend or deflect the line, if neces- sary to make said survey and boundary close at such point; and if you believe from the evidence before you that such boundary was so located and established in the making of the survey and map or plat of the city offered in evidence, and shall further believe from the evidence that the property of the defendants is within said boundary as so established, then you ought to find for the plaintiff, and unless you so believe you ought to find for the defendants.''

The city insists that the trial court erred in refusing to give this instruction, while the defendants argue that it should not have been given because it was, in effect, a peremptory instruction in favor of the city.

While there is some evidence to the effect that there is an old Lemon's Mill Road running off from the main turnpike road, all the witnesses agree that the Lemon's Mill Turnpike road, as now established, has been in existence for a number of years and was in existence at the time the act of the General Assembly became a law. There is no disagreement in regard to the facts submitted to the jury by the offered instruction. In other words, the location of the line, according to the contention of the city, if its theory of making the survey is proper, is admitted. The same is true of defendants' survey. While, ordinarily, the location of a survey is for the jury, yet, where the location of the lines, according to each theory of a survey, is not disputed and the proper method of making the survey is the only question in- volved, the question is one of law for the court and not of fact for the jury. Pendergrass v. Louisville & Nash- ville Railroad Company, 164 Ky., 740. It was the evi- dent purpose of the Legislature to fix the Lemon's Mill Turnpike Road as the boundary of the city at the place in question. Under these circumstances, it is not a proper method of surveying merely to extend the sou- thern boundary line to a point near the beginning corner and then run a line to the beginning corner. The road being a well fixed and established line, the road should be followed until it turns away from the last corner and from that point the line should be run to the last corner, so as to close the survey. It has been held that when a

boundary line is called to run with the highway, the highway will control, though not exactly in line with the courses and distances called for. Dupoyster, et al v. Miller, 160 Ky., 780. We think it equally clear · that, where the boundary line of a city is called to run with an established road, the line of the road should be followed until it becomes necessary to depart therefrom in order to close the survey. If this method be followed, the residence of defendants is in the city, and we, therefore, conclude that the trial court should have given a peremptory in favor of the city.

Judgment reversed and cause remanded for proceedings consistent with this opinion.